IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD LEHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.  99-919-CJP |
| v. | ) |
| | ) |
| KEN BARTLEY, and | ) |
| ROGER E. WALKER, JR.,[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

Before the Court is defendants' oral motion for judgment as a matter of law at the close of all the evidence.  **(Doc. 81)**.

Plaintiff Donald Lehn is an inmate in the Illinois Department of Corrections.  He filed suit pursuant to 42 U.S.C. § 1983 alleging that exposure to secondhand smoke in the IDOC violates his Eighth Amendment right to be free from cruel and unusual punishment.  He seeks injunctive relief only.

The parties consented to final disposition by a magistrate judge **(Docs. 67 and 73)**, and the case was tried before the undersigned.  At the close of plaintiff's case-in-chief and at the close of all the evidence, defendants orally moved for judgment as a matter of law under **Fed. R. Civ. P.  52(c)**.

Pursuant to **Rule 52(a)**, "the court shall find the facts specially and state separately its

---

[1] Ken Bartley, warden of Pinckneyville Correctional Center, is substituted for Michael Holmes.   Roger E. Walker, Jr., Director of the IDOC, is substituted for Donald Snyder. Fed.R.Civ.  P. 25(d).

1

conclusions of law thereon." **Rule 52(c)** provides that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

### Findings of Fact

The Court makes the following findings of fact:[2]

1. Plaintiff Donald Lehn has been an inmate in the Illinois Department of Corrections since 1996. He is currently assigned to Pinckneyville Correctional Center. (Tr. 6-7).

2. Plaintiff does not smoke and prefers to live with a cellmate who does not smoke either. (Tr. 34).

3. Plaintiff did not present any evidence to indicate that he presently suffers from any disease or health condition which makes it medically necessary that he avoid secondhand smoke. He does not have a permit signed by a doctor for a non-smoking cell. (Tr. 33-34).

4. The IDOC has a policy which authorizes the warden of a correctional institution to designate non-smoking cells. (Tr. 23-24, Plaintiff's Exhibit 14).

5. The warden of Pinckneyville has designated 6 cells on each wing as non-smoking. (Tr. 12-13).

6. At the time of trial, plaintiff was assigned to a non-smoking cell with a non-smoking cellmate. (Tr.18 ).

7. Plaintiff testified that some of his cellmates in designated nonsmoking cells have

---

[2] The transcript is in two volumes. In this memorandum and order, "Tr. __" refers to the first volume. "Tr. Vol. 2, __" refers to the second volume.

smoked. He gave no details about how many of his cellmates have smoked or about how much they smoked. He testified in detail about only one such cellmate, Cox. After Lehn complained, a guard took Cox' smoking materials, but Cox obtained more the next day. (Tr. 10-12 ).

8.   Plaintiff estimated that about one-half of the inmates in Pinckneyville smoke. (Tr. 16).

9.   Plaintiff did not perform any testing of the air quality in any area of the prison. (Tr. 35-36).

10.   Plaintiff is seeking injunctive relief only. He wants the warden to designate a whole wing or building smoke-free. (Tr. 23-25).

11.   Plaintiff is not claiming present damage. (Tr. 25). He seeks an injunction to prevent a risk of harm to his future health. He testified that, technically, exposure to carcinogens causes damage at the time of exposure, but "[w]hether or not the damage leads to a disease state depends on several factors." (Tr. 25-26).

12.   Prison officials consider other factors in addition to smoking preferences when celling prisoners together. These other factors include designation as predator or vulnerable, gang affiliation, security levels, and race. In addition, the inmates' work assignments and school enrollment status impact housing assignments. (Tr. 34-35; Tr. Vol. 2, 3-4).

10.   Cheryl Hawkins, an industrial hygienist with the Illinois Department of Labor, testified that she tested indoor air quality parameters at various institutions, not including Pinckneyville. Most of her testing was brought about by complaints "with regards to potential employee exposure." She found inadequate ventilation in some areas, and recommended changes. Her recommendations were implemented. (Tr. 44-47).

11.   Cheryl Hawkins testified her office did not receive complaints about air quality

from employees at Pinckneyville, and that occupational standards do not address levels of environmental tobacco smoke. (Tr. 48).

12. Mark Gerdes, IDOC Health Services Administrator, performed a spot check of living areas in Pinckneyville on March 10, 2005. It showed adequate ventilation. This is a check to see that the air system is operating correctly. It is not an assessment of the presence of ETS or other contaminants. (Tr.51-52 ).

13. On cross-examination, Gerdes testified that the ventilation system is not effective if it is not turned on. He testified that he believes that dilution through ventilation reduces levels of exposure to contaminants. He also testified that he has not tested the air for the presence of carcinogens, and that, while there are technologies that can reduce the levels of some carcinogens, he has no knowledge of whether those technologies are used at Pinckneyville. (Tr.52-54).

14. Ken Bartley has been the warden of Pinckneyville since April, 2006. He testified that inmates at Pinckneyville can request placement in nonsmoking cells, and that such requests are typically granted. (Tr. Vol. 2, 2). There are six nonsmoking cells on each wing, for a total of 96 nonsmoking cells in the institution. Approximately 2, 040 inmates are housed at Pinckneyville. (Tr. Vol. 2, 2-3).

15. Warden Bartley testified that he is unaware of complaints about secondhand smoke in the gallery. (Tr. Vol. 2, 3).

16. The warden testified that they have not designated more than 96 cells as nonsmoking because the majority of the inmates smoke. (Tr. Vol.2, 3).

17. To Warden Bartley's knowledge, the IDOC has a nonsmoking cell assignment policy to accommodate inmates' preferences, and not because of any health risk posed by

exposure to secondhand smoke.  (Tr. Vol.2, 6-7).

## Applicable Law

Mr. Lehn's claim must be analyzed under the well-established provisions of constitutional law concerning conditions of prison confinement.  The conditions of an inmate's confinement may constitute cruel and unusual punishment in violation of the Eighth Amendment, which applies to the States through the Fourteenth Amendment. ***See Wilson v. Seiter*, 501 U.S. 294 (1991).**

In order to establish that a condition of confinement violates the Eighth Amendment, a two part test must be satisfied.  This is referred to as the "*Farmer* test," named after the Supreme Court's seminal decision in ***Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994).**  The Farmer test has an objective and a subjective component.  First, an objective determination must be made that the conditions the inmate was required to endure were "sufficiently serious." ***Farmer v. Brennan*, 511 U.S. 825, 833, 834, 114 S. Ct. 1977.**   In other words, "a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities."  *Id***. (internal citation omitted)**.  In a case in which the inmate claims a failure to prevent future harm, the objective prong of the test requires that the inmate must show that the conditions of his confinement posed "a substantial risk of serious harm." *Id*.

The subjective prong of the *Farmer* test requires that plaintiff demonstrate that the defendant acted with deliberate indifference, which is the equivalent of recklessness in the criminal law sense. ***Farmer*, 511 U.S. at 837.**  An official exhibits "deliberate indifference" when he or she "knows of and disregards an excessive risk to inmate health or safety[;] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ***Farmer*, 511 U.S. at 837.**

Personal involvement is a prerequisite for individual liability in a civil rights action such as this; a defendant must have caused or participated in an alleged constitutional deprivation to incur liability. ***Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983); 42 U.S.C. § 1983.** The doctrine of *respondeat superior* cannot be used to impose Section 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights. ***Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997).** However, supervisory liability will be found if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. ***Lanigan*, 110 F.3d at 477.** Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not "personally involved" so as to incur liability. ***Id.*** "Rather, 'supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.'" ***Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-993 (7th Cir. 1988));** *see also **Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997).**

Mr. Lehn claims that his Eighth Amendment rights are being violated because he is exposed to second-hand smoke, commonly referred to as environmental tobacco smoke, or ETS. Plaintiff here does not claim that he has suffered present damage from such exposure. Rather, he claims that present exposure to ETS is likely to cause him harm in the future. The Supreme Court held in ***Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475 (1993),** that an inmate can bring such a claim under certain circumstances. In order to prevail, plaintiff must satisfy both prongs of the ***Farmer*** test. In order to satisfy the objective test, plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." ***Helling*, 509 U.S. at 35, 113 S. Ct. at 2482**.

The objective prong "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

Mr. Lehn must also satisfy the subjective prong of test. That is, his evidence must show that defendants have acted with deliberate indifference to the fact that he is exposed to levels of ETS which "pose an unreasonable risk of serious damage to his future health." **Helling, 509 U.S. at 35, 113 S. Ct. at 2481.** The Supreme Court has instructed that, where plaintiff seeks injunctive relief and claims that exposure to ETS is likely to cause him damage in the future, deliberate indifference "should be determined in light of the prison authorities' current attitudes and conduct," and that it is also appropriate to consider "arguments regarding the realities of prison administration." *Id.*, **509 U.S. at 36-37, 113 S. Ct. at 2482.**

In addition, the court must be guided by the Seventh Circuit's previous decision in this case, *Lehn v. Holmes*, **364 F.3d 862 (7th Cir. 2004)**. The Seventh Circuit held that Mr. Lehn has stated a claim challenging the IDOC's "system-wide" policy of housing non-smoking inmates with smokers. *Lehn*, **364 F.3d at 871**.

## Analysis

Plaintiff's testimony made two essential points. First, the IDOC has a policy whereby certain areas, including certain cells, are designated as non-smoking. However, according to plaintiff, the policy is not always enforced. He testified that has been assigned cellmates who smoked in the designated nonsmoking cell. There was a dearth of evidence about how many

times this happened, or how long each situation lasted.  At the time of trial, Mr. Lehn had been housed with a nonsmoker in a nonsmoking cell for about a month.  (Tr. 10-12; 18).

The claim that the IDOC is not enforcing its non-smoking policy consistently cannot be pursued in this case.  This is a case under 42 U.S.C. §1983 for violation of plaintiff's constitutional rights.  Section 1983 does not protect plaintiff from violations of state law or of the IDOC's regulations or policies.  **See**, ***Thompson v. City of Chicago and Officer Hespe*, 472 F.3d 444, 454 (7th Cir. 2006).**

Plaintiff also attempted to show that his involuntary exposure to ETS violates his Eighth Amendment rights.  This court finds that plaintiff's evidence falls far short of establishing either prong of the ***Farmer*** test.

First, plaintiff did not prove that he is being exposed to unreasonably high levels of ETS.  He presented no evidence at all to show the level of smoke to which he is exposed.  Mr. Lehn's position at trial was that exposure to *any* level at all of ETS is unsafe and a violation of his rights.  However, neither the Supreme Court nor the Seventh Circuit has ever held that a prison inmate has a constitutional right to live in a completely smoke-free environment.  On the contrary, ***Helling***, ***supra***, explicitly requires that the inmate show that "he himself is being exposed to unreasonably high levels of ETS."  ***Helling*, 509 U.S. at 35, 113 S. Ct. at 2482**.  Plaintiff has not done so here.

Plaintiff did not prove that the smoke to which he is exposed, whatever that level may be, poses "an unreasonable risk of serious damage to his future health."  ***Helling*, 509 U.S. at 35, 113 S. Ct. at 2481.**  He testified that it is his opinion that exposure to carcinogens may or may not lead to the development of disease, and compared such exposure to buying a lottery ticket.  (Tr. 15, 26).  This testimony does not come anywhere near proving that plaintiff is being

8

subjected to an unreasonable risk of serious future damage.

 The court has also considered the parties' evidence and arguments with regard to the issue of whether exposure of Mr. Lehn to ETS poses a danger so grave that it violates contemporary standards of decency.  Plaintiff's exhibits 10, 11, 12, and 13 are relevant to that issue.  The first three exhibits are newspaper articles about the fact that the city of Chicago enacted an ordinance which bans smoking in some public places in December, 2005.  Exhibit 13 is a newspaper article from 2002 about a proposed smoking ban in New York City.  These exhibits demonstrate that societal standards are evolving in this area.  For instance, Exhibit 11, an article from the *Daily Egyptian,* December 8, 2005, states that the Chicago ordinance passed "only after months of debate ... and aggressive lobbying on both sides."  The article states that smoking is banned in bars or restaurants, or both, in "more than 10 states" and "dozens of cities and counties," which amounts to substantially less than half of the country.  Exhibit 10, an editorial from the December 8, 2005, *Chicago Tribune,* notes that the ordinance passed "[a]fter months of wrangling in the City Council."  Exhibit 12, another article from the *Chicago Tribune,* December 12, 2005, discusses an anti-smoking activist's observation that activists "try to build a consensus first in their communities."  The activist stated "It can be a long and daunting process getting everyone to the table."

 Plaintiff's evidence fails to show that "the risk of which he complains is not one that today's society chooses to tolerate."  **Helling, 509 U.S. at 35, 113 S. Ct. at 2482**.  He has demonstrated the opposite; while societal attitudes towards exposure to ETS may be evolving, there is still substantial disagreement.  Contemporary societal standards are simply not violated by the exposure to ETS which he has demonstrated.  "Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide

9

prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." **Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001).**

In addition, Mr. Lehn failed to satisfy the subjective component of the *Farmer* test. His evidence demonstrated that defendants, the warden of Pinckneyville and the Director of the IDOC, have established a policy which prohibits smoking in certain areas and designates some cells as nonsmoking in an attempt to accommodate inmates' preference in this regard. **See, Plaintiff's Exhibits 14 and 15.** There was no evidence to suggest that they were subjectively aware of and disregarded a substantial risk of serious harm to plaintiff's future health. The court has also considered the "arguments regarding the realities of prison administration." **Helling, 509 U.S. at 36-37, 113 S. Ct. at 2482.** The evidence showed that prison administrators must take into account a number of factors besides smoking preference when making housing assignments, including designation as predator or vulnerable, gang affiliation, security levels, race, and inmates' work assignments and school enrollment status. (Tr. 34-35; Tr. Vol. 2, 3-4).

For the foregoing reasons, the court finds that Mr. Lehn has not established that his constitutional rights are being violated by exposure to environmental tobacco smoke at Pinckneyville Correctional Center or at any other institution within the Illinois Department of Corrections. Therefore, defendants' oral motion for judgment as a matter of law at the close of all the evidence **(Doc. 81)** is **GRANTED.**

Judgment shall be entered in favor of defendants.

**IT IS SO ORDERED.**

**DATE: March 8, 2007.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
